GARRETT, J:
|, Kimmy Lee Olson appeals from a trial court judgment ordering that his former wife, Melody Ann Rushing Olson, receive $810,902.60 from the proceeds of a court-ordered sale of two jointly-owned condominiums to compensate her for the shareholder debt allocation she used for the down payment for the initial purchase of the condominiums. We affirm the trial court judgment. We also deny the exception. of prescription filed in. this court by Kimmy.
FACTS
The parties were married in March 1987. In November 1987, they entered into a court-approved post-nuptial separation of property agreement. In 1996, Melody was awarded $2,440,163.05 in a sexual discrimination lawsuit. This money was her separate property. The parties formed KM, Inc., a real estate holding and. investment compány, in which they were equal shareholders. Other real estate holding companies, including KM Group, LLC (“KM Group”), were later formed. The owner of these companies is KM, Inc. Melody manages the different legal entities.
Melody loaned a significant portion of the proceeds of her lawsuit to the various business entities, establishing, shareholder debts owed to her. In 2009, the parties purchased units 201 and 901 in Riverscape Condominiums from KM Group, LLC, for $1,251,000. The sum of $810,902.60 of the shareholder debt owed to Melody was utilized as the down payment. The remainder of the purchase price was financed with a mortgage obtained from Community Trust Bank (“Community”). Kimmy did not contribute any funds toward the purchase of this property. The financial arrangements ^.surrounding the transaction were fully documented on the HUD settlement statement, which lists the $810,902.60 as a “[rjeduction in loan payable to Olson,” as the down payment. Kimmy executed the settlement statement and acknowledged its accuracy.
In 2011, Melody filed for divorce and for partition of co-owned property. In her petition filed on June 30, 2011, she alleged that the parties were separate in property. She further alleged, in pertinent part:-
*21 10.
It is anticipated that Petitioner and Defendant will be unable to agree on a partition of co-owned property or on a settlement of the claims between them arising from their separate property regime.
.11.
Petitioner is no longer willing to co-own the property with Defendant and, therefore, desires and is entitled to a judicial partition of all co-owned property, Petitioner, , therefore, moves that the Court partition the property co-owned by them[.]
In response to the suit, Kimmy contended that the post-nuptial separation of property agreement was invalid. The parties were divorced in September 2011.
In 2012 and 2013, the trial court conducted trials on the issues pertaining to the validity of the post-nuptial separation of property agreement and the partition. The court upheld the validity of the post-nuptial separation of property agreement and ordered partition in kind of the co-owned property.[1] These, judgments were appealed. This court .upheld |sthe validity of the post-nuptial separation of property agreement. We then ruled that, because the parties were co-owners in indivisión, the property had to be partitioned by lici-tation. See Olson v. Olson, 48,968 (La.App.2d Cir.4/23/14), 139 So.3d 539, writ granted, 2014-1063 (La.10/3/14), 149 So.3d 275, writ denied as improvidently granted, 2014-1063 (La.1/28/15), 159 So.3d 448. The matter was remanded to the. trial court.
A hearing on the partition by licitation was held on June 25, 2015. No new evidence was adduced. The parties recognized that Community has the first lien position on the condominiums and that debt should be satisfied first. Melody argued that the' remainder of the sale proceeds should go to her first, to reimburse her for the $810,902.60 she contributed for the purchase, and any funds remaining should be split evenly between the parties. Kimmy denied the existence of the shareholder debt and also took the position that the $810,902.60 was either' a loan from Melody to him, which had prescribed, or was a gratuitous donation to him. Thus, he asserted that the sales proceeds remaining after the payment of Community’s lien should be split evenly between them and that Melody should receive no reimbursement of. the money-she contributed for the [¿purchase. At the conclusion of the hearing, , the trial court took the matter under advisement.
On July 15, 2015, the trial court issued lengthy written reasons for judgment. It *22 reiterated its prior finding that there was credible evidence establishing that the shareholder debt existed and that $810,902.60 of it was used for the purchase of the condominiums. The trial court stated that there was no testimony or evidence at the partition trial to support Kimm/s claim that either a loan or a gift to him was contemplated at the time the condominiums were purchased.
Since the parties did not enter into an agreement at the time of the purchase as to how they would treat Melody’s initial investment, the court turned to the Louisiana Civil Code articles on co-ownership in indivisión for direction. Because there were no specific provisions to address this situation, the court then referred to principles on partnership. See Sampognaro v. Sampognaro, 41,664 (La.App.2d Cir.2/14/07), 952 So.2d 775, decision clarified on reh’g (Apr. 11, 2007), writ denied, 2007-0937 (La.6/22/07), 959 So.2d 500. The trial court cited La. C.C. arts. 2803 and 2833 for the proposition that, in the absence of an agreement, contributions to capital are restored to each partner in accordance with the contribution made by that partner. Based upon this reasoning, the trial court found that, after the mortgage was satisfied, Melody was entitled to reimbursement for her initial contribution of $810,902.60. The parties would then divide any remaining funds from the sale of the condominiums. Judgment to this effect was signed July 15, 2015. Kimmy appealed.
UKimmy filed an exception of prescription in this court claiming that, if he owes Melody $810,902.60, it was a loan and would have prescribed due to the passage of three years under La. C.C. art. 3494(3). On February 18, 2016, this court referred the exception to the merits of the appeal.
PRESCRIPTION
In his exception of prescription, Kimmy alleges that the $810,902.60 at issue was a loan. Consequently, he asserts that Melody’s claim for repayment is barred by La. C.C. art. 3494(3), which establishes a liberative prescriptive period of three years for an “action on money lent.” Because the shareholder loan allocation was made on June 24, 2009, he contends that her claim prescribed on June 24, 2012.
Melody filed an opposition to the exception of prescription. She contends that a settlement of accounts is incidental to an action for partition. She asserts that there is no prescriptive period for the right of a co-owner to partition property. She argues that this case does not involve a promissory note or the prescription of a promissory note. Melody also points out that the trial court previously denied Kim-my’s exception of prescription on the basis that the shareholder debt had not prescribed because payments were made each year on the shareholder debt.
ICimmy also raised the prescription issue before the trial court again on remand. In its July 2015 reasons for judgment, the trial court specifically found that there was no evidence to support Kimmy’s contention that the | Rfunds were a loan to him. Consequently, it held that there was no need for further discussion of the prescription argument.
The instant matter before the court involves a partition of co-owned property. There is no prescriptive period applicable to the right of a co-owner of property to bring a petition to partition that property. Sullivan v. Sullivan, 42,923 (La.App.2d Cir.2/13/08), 976 So.2d 329, writ denied, 2008-0816 (La.6/6/08), 983 So.2d 921. See LeBlanc v. LeBlanc, 2005-212 (La.App. 3d Cir.11/2/05), 915 So.2d 966; Terrebonne v. Theriot, 94-1632 (La. *23 App. 1st Cir.6/23/95), 657 So.2d 1358, writ denied, 95-2249 (La.11/27/95), 663 So.2d 743. A settlement, of accounts between co-owners is incidental to an action for partition. Von Drake v. Rogers, 45,305 (La.App.2d Cir.5/19/10), 36 So.3d 1218, writ denied, 2010-1471 (La.10/15/10), 45 So.3d 1111.
Like the trial court, we find no evidence in the record supporting Kimmy’s assertion that the funds at issue were a loan to him.[2] Furthermore, there is no prescriptive period affecting a co-owner’s right to seek partition of the co-owned property. The matter before the court now is in the nature of a settlement of accounts incidental to such a partition. Accordingly, we deny Kimmy’s exception of prescription.
^SHAREHOLDER DEBT REIMBURSEMENT
Kimmy argues that the trial court erred in finding that Melody had a shareholder debt balance of $810,902.60 with KM Group, LLC, without corroborating evidence, and in awarding her reimbursement from the sales proceeds before he was allowed to share equally in their distribution.
First, we address the trial court’s finding that Melody proved the existence of the $810,902.60 shareholder debt. Kim-my contends that the issue is before this court for review in the present appeal. Melody argues that this issue was briefed and decided in this court’s prior opinion and is thus law of the case.[3] Without belaboring the issue, we find that, under either scenario, the $810,902.60 shareholder debt was proven at the 2013 trial. Contrary to Kimmy’s claim of lack of evidence, the record contains the HUD settlement statement from the parties’ purchase of the condominiums, which was signed by both spouses on June 24, 2009, and which listed the $810,902.60 as a “[Reduction in loan payable to Olson.” It also contains the testimony of Melody, who detailed, the money she loaned to their companies; and Mr. Giger, the Qlsons’ CPA who documented these loans in business records and tax returns, which were also admitted into evidence. Their extensive and detailed testimony supported Melody’s position that the shareholder debt existed. In its written reasons for judgment issued on July 15, 2015, the trial court again referenced all this Istestimony and specifically found them to be credible witnesses and accepted their testimony as to the shareholder debt. Our review of the record reveals no manifest error in the trial court’s ruling, which relied heavily upon credibility determinations made by the trial court in favor of Melody’s witnesses.
Next, we consider the legal basis for the trial court’s decision to award reimbursement of the shareholder debt. As discussed at the June 2015 hearing, Melody *24 did not make any claims for reimbursement of-necessary expenses pursuant to La. G.C. art. 806.[4] Since the parties had not entered into an agreement about how to treat Melody’s initial investment on the condominiums at the time of their purchase, the trial court properly sought guidance from the Louisiana Civil Code and the jurisprudence. •
In Sampognaro, supra, the spouses had signed a prenuptial agreement establishing a regime of separate property. As a result, the appellate court ruled that the property division in their divorce proceedings was governed by the Civil Code articles concerning ownership in indivisión, La. C.C. arts. 797-818. However, certain factual circumstances did not lend themselves to easy application of those articles. The court addressed the resolution of this issue in footnote 1 of Sampognaro, supra, which stated:
In resolving co-ownership issues which are not precisely addressed in the specific code articles for co-ownership, courts will refer to the principles in the law regarding ownership, successions, and partnership. Moody v. Arabie, 498 So.2d 1081 (La.1986). Although Article 804 does not directly address this situation where the |9co-owners have consented to the improvement, reimbursement to the co-owner is analogous tó the partnership principle reflected in LSA-C.C. art. 2803, which provides for restoring a partner’s contribution to capital according to the contribution made.
Instructed by this language, the trial court in the instant matter first looked to La. C.C. art. 2803, which governs participation of the partners. It provides:
Each partner participates equally in profits, commercial benefits, and losses of the partnership, unless the partners have agreed otherwise. The same rule applies to the distribution of assets, but in the absence of contrary agreement, contributions to capital are restored to each partner according to the contribution made;
The trial court next considered La. C.C. art. 2833, which it then applied by analogy. That article pertains to division of partnership assets and states: .
The creditors of a partnership shall be paid in the following order of priority: secured creditors in accordance with their security rights; unsecured creditors who are* not partners; unsecured creditors who are partners. If any assets remain after 'the payment of all secured and unsecured creditors, the capital contributions shall be restored to the partners. Finally, any surplus shall be divided among the partners proportionally based on their respective interests in the partnership. ■
Additionally, the trial court found further guidance in the law concerning interpretation of contracts. It specifically looked to the provisions of La. C.C. arts. 2054[5] and 2055,[6] which require an equitable solution *25 where the parties in a contractual situation fail to make provisions for a particular scenario.
|lflGuided by the principles embodied in these articles, the trial court ordered that Melody be allowed to claim her initial contribution before any remaining funds were divided equally between her and Kimmy. We find no legal error in the trial court’s well-reasoned decision. We further agree with the trial court that to do otherwise would constitute an unjust enrichment of Kimmy at Melody’s expense.
Other circuits have reached similar results in comparable cases. In Slimp v. Sartisky, 2011-1677 (La.App. 4th Cir.9/17/12), 100 So.3d 901, amended on reh’g in part (Oct. 11, 2012), writ denied, 2012-2430 (La.1/11/13), 107 So.3d 616, a couple who never married purchased a house together. The purchase price was $860,000; Sartisky’s initial contribution was $375,243.00 while Slimp’s was $197,372.90. After their romantic relationship ended, Sartisky filed a partitioii suit against Slimp, requesting that the house be sold and that he be reimbursed for all amounts he expended on the property. The appellate court found that the parties intended to own, the house in indivisión, or 50 percent each. Therefore, each was entitled to 50 percent -of the proceeds from the sale of the house, once each party’s initial contribution was. deducted.
See also Esprit v. Henry, 2013-910 (La.App. 3d Cir. 5/7/14), 2014 WL 1802963, wherein the appellate court affirmed the equitable asset distribution fashioned by a trial court in a marital partition of a trailer home. The husband purchased the trailer home four months before the marriage for $58,000, putting down $20,000 of his own money and covering the rest by borrowing from a credit card, in anticipation of con-fecting a more h , conventional loan to pay off the credit card balance before interest accrued. However, the wife refused to agree to a mortgage. The marriage lasted only two months. Thereafter, the wife and her teenage son continued , living there for almost three years; she paid no mortgage or rent payments, and assumed no debt. The trial court ordered the property sold at private sale; Finding that the husband’s total liabilities for the property equaled $63,601.84, it directed that the first $63,601.84 derived from the sale would be used to reimburse the husband for his expenses associated with the trailer home, while any funds above that figure would be divided evenly between the parties. Under the facts presented, the appellate court' found the outcome was equitable and that there‘was no abuse of the trial court’s discretion.
We find no error in the trial court’s carefully crafted and equitable resolution of the instant matter.
CONCLUSION
We affirm the trial court judgment. The exception of prescription filed by Kim-my in this court is denied. ■
Costs of. this appeal are assessed to Kimmy.
' TRIAL COURT JUDGMENT AFFIRMED. • EXCEPTION OF PRESCRIPTION DENIED.

. In its May 2013 written reasons for judgment, the trial court also denied the éxception of prescription urged by Kimmy at that time-wherein he asserted that, under the three-year liberative prescriptive period of La. C.C. art. 3494(3), his former wife’s claim that loans she made to their companies had established a shareholder debt to her were barred by prescription. In so ruling, the court found that there was evidence of an annual payment on the outstanding shareholder debt through adjustments related to her salary payments and deductions for personal charges she made on company credit cards. The court concluded that such payments acknowledged the debt and interrupted prescription.
As to the shareholder debt , issue, the court additionally stated:
Although the Defendant attempts to discredit Plaintiff’s claim of the shareholder debt she is owed, the Court believes that there was a substantial amount of evidence to prove such debt existed. Aside from Plaintiff's testimony and her fairly meticulous record keeping, there is the testimony of Phil Giger, the certified public accountant for the parties and entities for the previous fifteen years; testimony of Lydia Dana and the expert appraisers, as well as all banking and property records submitted into evidence, The Court found all of these individuals to be credible witnesses;

. We agree with the analysis by the trial court that Kimmy’s prescription argument was without merit and did not need to be addressed further because .Melody’s substantial contribution to the purchase of the condominiums was not a loan by her to Kimmy. Even assuming for the sake of argument that it could be so construed, she filed this suit, which included her claim for a partition of any property co-owned with Kimmy, on June 30, 2011. As quoted above, paragraphs 10 and 11 of her original suit clearly encompass any claims against Kimmy. . Since this suit was filed within the three-year prescriptive period contained in La. C.C. art. 3494(3), his contentions are simply without merit.

. A review of that opinion shows that, without making a specific finding, the court obviously accepted the existence of the $810,902.60 shareholder debt as a proven fact. In its recitation of the facts, the’court stated: "Melody allocatec| $810,902.60 of her shareholder debt as the down payment and the remainder of the price was borrowed from Community Trust Bank.” Olson, supra, at 542.

, In relevant part, it states, "A co-owner who on account of the thing held in indivisión has incurred necessary expenses, expenses for.ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares.”

. This article provides: "When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that land or necessary for the contract to achieve its purpose.”

.In relevant part, this article states: “Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no *25 one is allowed to enrich himself unjustly at the expense of another.”